*356 ORDER (Granting Injunction)
AMANDA L. ROCKMAN, Associate Judge.
INTRODUCTION
The Court must determine whether to grant the relief requested by the plaintiff. On November 11, 2006, the Ho-Chunk Nation General Council (hereinafter General Council) enacted General Council Resolution 1.1-11-06A, providing for the removal of the plaintiff from his office of Ho-Chunk Nation President. The plaintiff seeks a Preliminary Injunction to enjoin the defendants from further acting upon the resolution. The Court hereby grants the injunction for the reasons articulated within the decision portion of this judgment.
PROCEDURAL HISTORY
The plaintiff filed his Complaint with accompanying Notice of Motion and Motion for Temporary Restraining Order and Preliminary Injunction (hereinafter Plaintiff’s Motion) and attached legal brief (hereinafter Plaintiffs Brief) on November 15, 2006. See Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.\ Rule 18 (enabling the filing of a motion with an initial pleading). Consequently, the Court issued a Summons accompanied by the above-mentioned documents on November 16, 2006, and delivered the documents by personal service to the governmental defendants’ representative, Ho-Chunk Nation Department of Justice (hereinafter DOJ).[1] The Summons informed the defendants of the right to file an Answer within twenty (20) days of the issuance of the Summons pursuant to HCN R. Civ. P. 5(A)(2). The Summons also cautioned the defendants that a default judgment could result from failure to file within the prescribed time period.
On November 17, 2006, the Court also sua sponte (on its own accord) issued an Order (Inviting Participation of Amicus Curiae). Due to the filing of Plaintiffs Motion, the Court mailed Notice(s) of Hearing to the parties on November 20, 2006, informing them of the date, time and location of the Motion/Prelim in ary Injunction Hearing. Prior to the Hearing, the defendants, by and through Best & Flanagan LLP counsel Michael P. Murphy, timely filed the Defendants’ Brief in Opposition to Motion for TRO and Preliminary Injunction (hereinafter Defendants’ Brief) on November 22, 2006. See HCN R. Civ. P. 19(B). The Court convened the Motion/Preliminary Injunction Hearing on Monday, November 27, 2006 at 9:00 a.m. CST.[2] The following parties appeared at the Hearing: the plaintiff *357 George R. Lewis appearing pro se (without counsel); Attorney Michael P. Murphy, for the defendants Ho-Chunk Nation pro tem-pore President, Wade Blackdeer, Ho-Chunk Nation Treasurer, Becky Albert and the Ho-Chunk Nation Election Board (hereinafter Election Board) members, Mary Ellen Dumas and Wilma Thompson; Attorney Mark L. Goodman, for defendant Acting Chair of the General Council Francis Decorah. The Court sua sponte dismissed the defendant Acting Chair of the General Council Francis Decorah. The plaintiff cannot receive injunctive relief from either the Chairperson or the Secretary of the General Council due to the temporal nature of their office. See, e.g., Timothy G. Whiteagle et al. v. Alvin Cloud, Chair of Gen. Council et al., CV 04-04, 5 Am. Tribal Law 178, 194, 2004 WL 5595382 (HCN Tr. Ct, Aug. 5, 2004) at 22.
Also at the Motion/'Preliminary Injunction Hearing, Agent Representative for District Two (2), Tomah, Tara Swallow, provided a statement on behalf of the Ho-Chunk Nation General Council Agency (hereinafter GCA). The Court had invited this statement in the above-referenced order, as well as a verbal invitation during the Hearing. The beginning of Ms. Swallow’s statement is as follows: “[t]he General Council Agency is intended to work for the General Council branch of government. However, it is not our function to act as a mouthpiece for the General Council. After quorum has been established, all actions have been voted on is the wishes of General Council.” LPER, 10:43:12 CST.[3]
*358 APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Preamble
We the People, pursuant to our inherent sovereignty, in order to form a more perfect government, secure our rights, advance the general welfare, safeguard our interests, sustain our culture, promote our traditions and perpetuate our existence, and secure the natural and sell-evident right to govern ourselves, do ordain and establish this Constitution for the Ho-Chunk Nation.
Art. Ill—Organization of the Government
Sec. 3. Separation of Functions. No branch of the government shall exercise the powers and functions delegated to another branch.
Sec. 4. Supremacy Clause. This Constitution shall be the supreme law over all territory and persons within the jurisdiction of the Ho-Chunk Nation.
Art. IV—General Council
Sec. 1 Powers of the General Council. The People of the Ho-Chunk Nation hereby grant all inherent sovereign powers to the General Council. All eligible voters of the Ho-Chunk Nation are entitled to participate in General Council.
Sec. 2 Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Sec. 3. Powers Retained by the General Council..
(a) The General Council retains the power to set policy for the Nation.
•(b) The General Council retains the power to review and reverse actions of the Legislature except those enumerated in Section 4 of this Article. The General Council shall return such reversals to the Legislature for reconsideration consistent with the action of the General Council. The General Council retains the power to review and reverse decisions of the Judiciary which interpret actions of the Legislature. The General Council does not retain the power to review and reverse decisions of the Judiciary which interpret this Constitution.
(c) The General Council retains the power to propose amendments in accordance with Article XIII, including those which reverse decisions of the Judiciary interpreting this Constitution.
(d) The General Council retains the power to establish its own procedures in accordance with this Constitution.
(e) The General Council retains the power to call a Special Election.
(f) Actions by the General Council shall be binding.
Sec. 5. Annual Meetings. The People shall meet in General Council at least one time each year, which shall be called by the President and at other times as provided in Section 6 of this Article. Notice shall be provided by the President for all Annual Meetings of the General Council.
Sec. 7. Procedures. Twenty (20) percent of the eligible voters of the Nation present in General Council shall constitute a quorum. Each action of the General Council shall require the presence of a quorum. The President shall call all *359 Annual and Special General Council Meetings, except those meetings called pursuant to Article IX, Section 2. When a quorum is attained, the General Council shall select either the President or another person to conduct the meeting. A secretary shall be appointed to record the minutes of an [sic ] General Council meetings, including any votes taken. The secretary shall transmit the minutes of General Council meetings to the Legislature.
Art. VI—Executive
Sec. 1. Composition of the Executive,
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing, Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of the Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Art. VII—Judiciary
Sec. 4. Powers of the Judiciary. The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judiciary shall have the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.
Sec. 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. <>. Powers of the Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachments and mandamus.
(b) The Trial Court shall have the power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with this Constitution.
Sec. 1. Powers of the Supreme Court.
(b) The Supreme Court shall have the power to establish written rules for the Judiciary, including qualifications to practice before the Ho-Chunk courts, provided such rules are consistent with the laws of the Ho-Chunk Nation.
Art. VI1 f—Elections
Sec. 1. General Elections. General Elections shall be held on the first Tuesday in June of odd numbered years. Offices of the Legislature, Executive, and Judiciary shall be filled at General Elections.
Art. IX—Removal, Recall and Vacancies
Sec. 2. General Council Removal of the President. The General Council may remove the President for malfeasance. No vote by the General Council to remove the President shall take place before such President has been given reasonable notice of the impending action and has had a reasonable opportunity to be heard.
*360 Art. XII—Sovereign Immunity
Sec. 1. Immunity of Nation from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and officials or employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
Sec. 2. Suit Against Officials and Employees. Officials or employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing rights and duties established by this constitution or other applicable laws.
[[Image here]]
*361 [[Image here]]
HO-CHUNK NATION RULES OF JUDICIAL ETHICS
Sec. 4-2. Conflic t of Interest/Recusal.
C. At the judge or justice’s discretion, if there is a fact or issue which may require a disclosure to prevent the appearance of impropriety, that information must be disclosed to the parties. If the parties do not respond in the form of a Motion for Recusal, there is no basis for the judge or justice to recuse.

Comment: A judge or justice may discern that certain facts or information should be provided to the parties in a case to avoid an appearance of impropriety. Examples are extended family relationships, attorney-client relationships, working relationships and situations ■wh ich may raise an appearance of impropriety.

HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 5. Notice of Service of Process.
(A) Definitions.
(2) Summons—The official notice to the party informing him/her that he/she is identified as a party to an action or is being sued, that an Answer is due in twenty (20) calendar days (See HCN R. Civ. P. 6) and that a Default Judgment may be entered against them if they do not file an Answer in the prescribed time. It shall also include the name and location of the Court, the case number, and the names of the parties. The Summons shall be issued by the Clerk of Court and shall be served with a copy of the filed Complaint attached.
(C) Methods of Service of Process
(1) Personal Service. The required papers are delivered to the party in person by the bailiff, or when authorized by the Court, a law enforcement officer from any jurisdiction, or any other person not a *362 party to the action who is eighteen (18) years of age or older and of suitable discretion.
(a) Personal Service is. required for the initiation of actions in the following:
(i) Relief requested is over $5,000.00, excluding the enforcement of foreign child support orders.
(e) Service by Mail. Service of process may be accomplished by sending the required papers to a party by registered mail with return receipt: requested, except in the instances of Rule 5(C)(l)(a)(ij ... as stated above.
Rule 27. The Nation as a Party.
(B) Civil Actions. When the Nation is filing a civil suit, a wilt of mandamus, or the Nation is named as a party, the Complaint should identify the unit of government, enterprise or name of the official or employee involved. The Complaint, in the case of an official or employee being sued, should indicate whether the official or employee is being sued in his or her individual or official capacity. Service can be made on the Ho-Chunk Nation Department of Justice and will be considered proper unless otherwise indicated by these rules, successive rules of the Ho-Chunk Nation Court, or Ho-Chunk Nation Law.
Rule 53. Relief Available.
Except in a Default Judgment, the Court is not limited to the relief requested in the pleading and may give any relief it deems appropriate. The Court may only order such relief to the extent allowed by Ho-Chunk Nation enactments. The Court may order any party to pay costs, including attorney’s fees, filing fees, costs of service and discovery, jury and witness costs. Findings of fact and conclusions of law shall be made by the Court in support of all final judgments.
Rule 54. Default Judgment.
A Default Judgment may be entered against a party who fails to answer if the party was personally served in accordance with Rule 5(C)(l)(a)(i) ... or obtained judicial authorization to pursue other means of service such as publication or if a party fails to appear at a hearing/conference or trial for which he/she was given proper notice. A 'Default Judgment shall not award relief different in kind from, or exceed the amount stated in the request for relief. A Default Judgment may be set aside by the Court only upon a timely showing of good cause.
Rule 57. Entry and Filing of Judgment.
All judgments must be signed by the presiding Judge. All sighed judgments shall be deemed complete and entered for all purposes after the signed judgment is filed with the Clerk. A copy of the entered judgment shall be mailed to each party within two (2) calendar days of filing. The time for taking an appeal shall begin running from the date the judgment is filed with the Clerk. Interest on a money judgment shall accrue from the date the judgment is filed with the Clerk at a set rate by the Legislature or at five percent (5%) per year if no rate is set.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity which prevented a party from receiving a fair trial or a substantial legal error which affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the *363 Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C)Motion to Modify. After the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion, to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (BO) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Reissuance of Judgment. Clerical errors in a court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; or (2) fraud, misrepresentation or serious misconduct of another party to the action; or (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii); did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
HO-CHUNK NATION RULES OF APPELLATE PROCEDURE
Rule 8. Appeal by Permission,
An appeal from an interlocutory order maybe sought by filing a petition for permission to appeal with the Supreme Court Clerk within ten (10) calendar days after the entry of such order with proof of service on all other parties to the action. The petition shall contain a statement of the facts necessary to an understanding of the controlling question of law determined by the order of the Trial Court; a statement of the question itself; and a statement of the reasons why substantial basis exists for a difference of opinion on the question and why an immediate appeal may materially advance the termination of the litigation. The petition shall include or have attached a copy of the order relating thereto. Within ten (10) calendar days after service of the petition, an adverse party may file an answer in opposition.
*364 FINDINGS OF FACT
1. The plaintiff, Mr. George Lewis, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A0Ü1386, and resides at 3(50 W. Washington Ave, Madison, WI 53703. Mr. Lewis was the President of the Ho-Chunk Nation.
2. The defendant, Ms. Mary Ellen Dumas, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A002156. Ms. Dumas is the Chair of the Election Board. The defendant, Ms. Wilma Thompson, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A002248. Ms. Thompson is Vice Chair of the Election Board. The defendant, Mr Wade N. Blackdeer, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A000205. Mr. Blackdeer was the Vice President of the Ho-Chunk Nation, and currently is the pro tempore President. The defendant, Mr. Francis Decorah, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A000532. Mr. Decorah was selected at the November 11, 2006 General Council Annual Meeting to act as the General Council’s Chairperson. Gen. Council Mins. (Nov. 11, 2006) at 1; see also Const. Art. IV § 7. The defendant, Ms. Becky Albert a/k/a Manuell is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A004204. Ms. Albert is the Treasurer of the Ho-Chunk Nation.
3. On Octobei 17, 2006, a meeting of the Legislature was held at the DeJope Bingo Hall, located on trust lands of the Ho-Chunk Nation in Madison, Wisconsin 53718.
4. At the meeting of the Legislature, Robert Funmaker, Jr. set a Notice of Intent to Remove from Office in front of President George Lewis, and then walked away. A copy of the same Notice was also placed in front of Vice President Wade Blackdeer. PI. ⅛ Hr. at 2.
5. The Notice of Intent to Remove from Office listed four (4) charges against President Lewis, alleging malfeasance in office based upon a contract entered into with SMP Communications Corporation of Scottsdale, Arizona.
6. The first charge alleged that only the Legislature retains the right to negotiate and enter into contracts on behalf of the Nation. Thus, President Lewis’ negotiating of the SMP contract was negligent and unlawful.
7. Additionally, within the first charge, it is maintained that the SMP contract was not in the best interest of the Nation due to the $1.3 million dollar administrative fee to be paid to SMP, the calculation basis for SMP’s incentive fee, the termination provision, automatic renewal provision, and concerns about the preservation of sovereign immunity.
8. The second charge asserts that President Lewis failed to document and authorize the acquisition of the SMP contract, as required under § 25 of the HCN Finance Manual.
9. Within the third charge, it is contended that President Lewis failed to follow the required three-bid process from the HCN Materials Management Property & Procurement Manual.
10. In the fourth charge, it is claimed that President Lewis violated the Ho-Chunk Nation Tribal Employment Rights Ordinance (hereinafter TERO) by failing to include the required two percent (2%) TERO fee in the SMP contract.
11. The October meeting of the Legislature was held twenty-five (25) days before the General Council. See Defs.’ Hr at 2.
12. On October 18, 2006, a confidential memorandum was generated by DOJ Attorney Paul Rosheim to Executive Admin *365 istrative Officer Jon Greendeer. This memo noted that the aforementioned allegations outlined in Findings of Fact 5-9 were not based upon fact. See Mem. Re: SMF Charges for Presidential Removal (Oct. 18, 2006). The contract was approved by the Department of Justice.
13. On November 10, 2006, Scott Brown, President of SMP Communications Corporation, sent a brief letter reaffirming that SMP had paid all appropriate TERO fees quarterly since October 2005.
14. A meeting of the General Council was held on November 11, 2006, at the La Crosse Center in La Crosse, Wisconsin 54601. Quorum was reached at 1:00 p.m. CST, and was maintained through all relevant times during the General Council Meeting. See Const., Art. IV, § 7.
15. The action of the General Council that is called into question is the removal from office of George Lewis, President of the Ho-Chunk Nation.
16. The present Constitution was enacted by special Secretarial Election on September 17, 1994, and approved by the Assistant Secretary of the Department of the Interior on November 1, 1994. The Constitution requires that twenty percent (20%) of the eligible voters of the Nation be present for a quorum to conduct business of the Nation. Id.
17. On November 11, 2006, twenty percent (20%) of the voting members of the Ho-Chunk Nation amount to approximately 946 members.
18. After quorum was declared, Francis Decorah was selected as Chairman of the meeting. Mr. Decorah was approved by a vote of seventy-four percent (74%) of those present. Chairman Decorah selected Diane LoneTree and Judy Whitehorse to serve as secretaries for the General Council. See PL ⅛ Br. at 3.
19. Only two (2) items were approved for inclusion on the agenda. During the formulation of the agenda, Robert Fun-maker, Jr. moved for the inclusion of the Notice of Intent to Remove from. Office; this motion was seconded by Dan Brown. Id.
20. Mr. Funmaker, Jr. read the Notice of Intent to Remove from Office, and pertinent portions of the disputed contract with SMP.
21. Due to the limited number of items accepted to the agenda, President Lewis was permitted nearly ten (10) minutes to answer the charges against him. LPER, 09:18:35, 09:29:04 CST.
22. President Lewis did not present documents or call witnesses to support his account of the items listed within the Notice of Intent to Remove from Office. After his ten (10) minutes, President Lewis called for the question. Pi’s Br. at 3.
23. Of the voting members present, 584(59%) voted for removal, 341(39%) voted against removal, and 71 members (7%) abstained from the vote. Chairman Deco-rah noted the resolution passed. See id.
24. Following President Lewis’ removal, Vice President Wade Blackdeer was elevated to the position of pro tempore President, as required by the Constitution. See Const., Art. IX, § 9(b).
25. On November 15, 2006, President Lewis had his wife file a Complaint, Plaintiffs Motion and Plaintiffs Brief with exhibits in the Trial Court. It was later mentioned at the Motion/Preliminary Injunction Hearing that he felt that the gag-order established during General Council prevented him from coming on Ho-Chunk Nation territory, hence his reason for having his wife file on his behalf. LPER, 10:18:44 CST.
26. Under the Constitution, since the next General Election is more than seven *366 (7) months away, a Special Election must be called to fill Vice President Blackdeer’s vacant seat in Area 2. The Special Election must take place within thirty (30) days. Const., ART. IX, § 10(a).
DECISION
On November 11, 2006, the General Council removed President George Lewis pursuant to General Council Resolution 11-11-06A. The General Council based his removal on malfeasance regarding charges attached to the Notice to Remove from Office. The plaintiff seeks a preliminary injunction to enjoin the defendants from further acting upon the resolution. The Court has adopted a four-part test for the purpose of evaluating requests for preliminary injunctions. A party must show that (1) they have no adequate remedy at law; (2) the threatened injury to the plaintiff outweighs the harm of issuing an injunction; (3) the plaintiff has a reasonable likelihood of success on the merits; and (4) granting the injunction serves the public interest. See HCN Election Bd. v. Aurelia Lera Hopinkah, SU 98-08 at 8 (HCN S.Ct., Apr. 7, 1999); Coalition for Fair Gov’t II v. Chloris Lowe, Jr., et al., CV 96-22 (HCN Tr. Ct., July 23, 1996); Joyce Warner et al. v. HCN Election Bd., CV 95-03-06, -09-10 (HCN Tr. Ct., July 3, 1995) at 4; Tracy Thundercloud v. HCN Election Bd., CV 95-16 (HCN Tr. Ct., Aug. 28, 1995).
The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial can be heard on the merits. “A preliminary injunction is granted on the basis of' procedures that are less formal and evidence that is less complete than in a trial on the merits.” Univ. of Texas et al. v. Camnisch, 451 U.S. 390 at 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). A party is not required to prove his ultimate ease at the hearing, and therefore the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. Id. Persuasive law indicates that unless the appellant can show that the lower court abused its discretion, the appellate court will not intervene. Brown v. Chote, 411 U.S. 452, 457, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973).
The Ho-Chunk Nation Supreme Court (hereinafter Supreme Court) accepted the following definition of abuse of discretion: “any unreasonable, unconscionable and arbitrary action taken without proper consideration of facts and law pertaining to the matter submitted.” Daniel Youngthunder, Sr. v. Jonette Pettibone et al., SU 00-05 (HCN S.Ct., July 28, 2000) at 2 (quoting Black’s Law Dictionary 11 (6th ed.1990)).
“Once all the equitable factors are before the judge ... a classic discretionary decision must be made involving how much weight to give individual components of the calculus and to what direction the balance of equity tips. The ultimate decision of whether or not to grant the motion is in a real sense intuitive. The law of injunction tells the judge what factors are relevant but ... the balancing and weighing process is not susceptible to quantification or formalization. Ultimately, the ... judge has to arrive at a decision based on a subjective evaluation of the import of various factors and a personal, intuitive sense about the nature of the case.... [T]he final, and most important decision as to whether to grant or deny the motion is discretionary. ... ”
Lawson Products, Inc. et al. v. Avnet, Inc., 782 F.2d 1429, 1436 (7th Cir.1986) (citations omitted). The merits of the underlying case are not before the Court, however the Court weighs the factors outlined be *367 low and determines that the preliminary injunction is warranted.
I. Is there an adequate remedy at law?
 The first prong of the test requires that the Court determine whether the plaintiff can reasonably be compensated by money damages. If so, then they have an adequate remedy at law, and the injunction would be denied. In the instant case, money damages cannot compensate the plaintiff. The Court may only award equitable relief when officials of the Ho-Chunk Nation act beyond the scope of their duties. Millie Decorah et al. v. Joan Whitewater, SU 98-02 (HCN S.Ct., Oct. 26, 1998) at 4; see also Const., Art. XII, § 1-2. A plaintiff must institute such a suit against an official or employee, claiming that the individual “actfed] beyond the scope of their duties or authority.” Id., Art. XII, § 2. Lacking a properly executed waiver of sovereign immunity by the duly elected Legislature, the Trial Court has a limited ability to award any damages to the plaintiff. The Supreme Court held that “the principle of sovereign immunity exists primarily to protect the public treasury from lawsuits seeking damages. It does not prevent people from suing the HCN government to enforce their rights under the HCN Constitution.” Hope B. Smith v. Ha-Chunk Nation, SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 10.
The plaintiff seeks to prevent an alleged wrongful removal of a properly elected official and uphold the plain meaning of the Constitution. The plaintiff identified the officials and employees responsible for implementing the General Council’s actions. Ex Parte Young, 209 C.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Because the plaintiff properly identified the defendants and seeks only injunctive relief from the enforcement of the General Council’s actions, the defendants can assert no sovereign immunity defense. The Court finds that an award of monetary damages w'ould not compensate the plaintiff for the alleged wrongful removal from his position as duly elected President. The defendants concede that the plaintiff succeeds on the first prong; there is not an adequate remedy at law. Defs. ’ Dr. at 6.
II. Does the threatened harm to the plaintiff outweigh the harm of issuing the injunction?
The plaintiff seeks to further prevent the alleged, ongoing wrongful removal from office of President, which the plaintiff argues may violate the Constitution and may be ultimately ruled invalid. The plaintiff also notes that he suffers immediate and irreparable harm by being deprived of his position. Pl.'s Dr. at 8-9. The defendants argue that an injunction will not aid the plaintiff because the position has already been filled by pro tempore President Blackdeer, and therefore an injunction would not address the plaintiffs injury because the plaintiffs position was filled automatically by pro tempore President Blackdeer. Defs. ’ Br. at 7.
That temporary restraining orders and preliminary injunctions are intended to ‘preserve the status quo’ is indeed a common formula, but it is much, and rightly criticized. Preliminary relief is properly sought only to avert irreparable harm to the moving party. Whether and in what sense the grant of relief would change or preserve some previous state of affairs is neither here nor there. To worry these questions is merely to fuzz up the legal standard.
Chicago United Indus., Ltd., et al. v. City of Chicago, et al., 445 F.3d 940, 944 (7th Cir.2006) (citations omitted). The Court recognizes that granting the preliminary *368 injunction will not preserve the status quo by placing pro tempore President Black-deer into his original seat as Vice President,, but it will avert irreparable harm to the plaintiff.
The plaintiff also seeks to prevent the election for District 2 Legislator to replace the vacancy left by pro tempore President Wade N. Blackdeer. The Court has previously addressed this logic. See Jacob Lonetree et al. v. Robert Funmaker et al., CV 00-105 (HCN Tr. Ct., Nov. 21, 2000) at 13. If the election to replace the vacancy left by pro tempore President Blackdeer should take place, then a chance exists that if the plaintiff succeeds on the merits, the newly elected District 2 Legislator would seemingly be displaced. Id. Also, two (2) legislators would simultaneously occupy the same seat, and such a result is not contemplated by the Constitution.
Under the Constitution, if less than twelve (12) months remain before the next General Election, the Vice President shall serve as President pro tempore. Const., Art. IX, § 9(b). If less than twelve months but more than three months remain before the next General Election, the Election Board shall call a Special Election in the appropriate area within thirty (30) days to fill the seat vacated by the Vice President.[4] Id., ART. IX, § 10(a). Upon election of a President at the next General Election, the Vice President “shall reas-sume his seat on the Legislature for the remainder of his term, if any.” Id. Here, the next General Election will be held in June 2007. Id., Art. VI11, § 1. There is approximately seven (7) months remaining until the next General Election. If the plaintiff succeeds on the merits of the case and is returned to his office, pro tempore President Blackdeer would simply return to his seat in the Legislature.
After balancing the harms to the plaintiff in issuing the injunction, the balance of harms tips in the plaintiffs favor.
An injunction can be a temporary measure to sort out the facts and determine whether a more full development of the facts and arguments will indicate whether further action is warranted. It may be that the Court is wrong in its initial assessment, however, the threat of irreparable harm does tip sharply in favor of the plaintiffs.
Coalition for Fair Gov’t II, CV 96-22 at 19. The threatened harm to the plaintiff outweighs the harm of issuing an injunction.
III. Does the plaintiff have a reasonable likelihood of success?
The plaintiff contends that he has a likelihood of success on the merits based upon two arguments. First, the plaintiff was denied due process of law, and second, the grounds for removal were false and based on inaccurate information. The Court agrees with the plaintiff as to his second *369 argument, however the Court does not agree as to his first argument.
A. The plaintiff was not denied due process of law.
 The Constitution states that
[n]o vote by the General Council to remove the President shall take place before such President has been given reasonable notice of the impending action and has had a reasonable opportunity to be heard.
Const., Art. IX, § 2. It is not contested that President Lewis received the Notice of Intent to Remove from Office twenty-five (25) days before the General Council meeting. Pl.s Br. at 2. Furthermore, the defendant noted that the plaintiff was allowed nearly ten (10) minutes to defend himself against the General Council’s accusations. Defs.’ Br. at 8. At the hearing, the plaintiff admitted that he was given approximately ten (10) minutes. LPER, 09:18:35, 09:29:04 CST. Furthermore, the plaintiff notes that he was unable to call witnesses or confront his accusers. PL’s Br at 6-7. However, the plaintiff did not attempt to call witnesses or confront his accusers; the plaintiff instead called the question. PI. ⅛ Br. at 3. Therefore, weighing the evidence at hand and arguments presented, the plaintiff would not have a reasonable likelihood of success on the merits regarding a denial of due process.
B. The plaintiff has a reasonable likelihood of success on the merits of the claim that the plaintiff was not removed based upon malfeasance.
The people of the Ho-Chunk Nation adopted the Constitution on November 1,1994. Const., ART. XVI, They granted all inherent sovereign powers to the General Council. Id., Art. IV, § 1. They also noted that the Constitution “shall be the supreme law over all territory and persons within the jurisdiction of the-Ho-Chunk Nation.” Id., Art. Ill, § 4. The Constitution states that “[t]he General Council may remove the President for malfeasance.” Id., Art. IX, § 1. The General Council authorized the judicial branch to interpret and apply the laws and the the Constitution. Id,, Art. IV, §§ 2, 3(b). Therefore, the Court has the authority to define malfeasance. The Court has previously defined malfeasance:
As appropriately pointed out by the plaintiffs, malfeasance has a commonly understood meaning. According to Webster’s Third International Dictionary Unabridged (1986) “malfeasance” is:
Wrongdoing, Misconduct. The doing by a public officer under color of authority of his office of something that is unwarranted, that he has contracted not to do and that is legally unjustified and positively wrongful or contrary to law.
According to Black’s Law Dictionary “malfeasance” is:
Evil doing; ill conduct. A commission of some act which is positively unlawful. The doing of an act which is wholly wrongful and unlawful. The doing of an act which a person ought not to do at all or the unjust performance of some act which the party had no right, or which he had contracted to do. Black’s Law Dictionary p. 956 (6th Ed.1990).
See Coalition for Fair Gov’t, CV 96-22 at 19. The General Council has the authority to as to whether such acts constitute malfeasance. The Court has also indicated that “[w]hile it is true that the issue of whether a Legislator has committed malfeasance is up to the General Council to decide, it is limited by the framework of the HCN Constitution.” Id. Likewise, it is true that the issue of whether a President *370 has committed malfeasance is up to the General Council to decide, but it is also limited by the framework of the Constitution. However, the Court noted that “[mjalfeasance cannot be charged for doing a lawful act such as doing one’s job.” Id, The Court will typically defer to the General Council; however the documents, which the plaintiff submitted at this juncture indicate that he was completing his job, and the contract execution was legal. The plaintiff argues that the General Council voted to remove him based on improper information. It was the opinion of the Nation’s counsel that the plaintiff had acted within the scope of his office when he entered into the contract with SMP Communications. On October 18, 2006, DOJ Attorney Paul Rosheim sent a memo to Executive Administrative Officer Jon Greendeer, outlining why each of the alleged grounds for removal listed within the Notice of Intent to Remove from Office lacked a basis in fact. The memo serves as additional confirmation to the Findings of Fact, which reflect that the President did not commit “legally unjustified and positively wrongful or contrary to law” acts.
The removal process requires more than a popular approach or popular dislike, it requires malfeasance. Tribal members assess the popularity or lack of popularity of other tribal and non-tribal members and tribal and non-tribal entities daily. See generally Bulletin Board,, http://www. hocakworak.com (last vistited Dec. 1, 2006). At this point in time the Court need not predict the eventual outcome on the merits, but the plaintiff argues that the contract in question was a legal and valid contract, and therefore based on the information before the Court, at this juncture, could be a valid legal argument.
The defendants argue that the Court, should steer clear of the General Council’s decision as it is based on a political question. The Court recognizes that other jurisdictions have decidedly ruled that impeachments or removals are political questions. See generally Walton v. Oklahoma, 263 U.S. 721, 44 S.Ct. 230, 68 L.Ed. 524 (1924) (removing Oklahoma Governor for illegal collection of campaign funds, padding public payroll, unconstitutional suspension of habeas corpus, excessive use of pardon power and general incompetence); Nixon v. United States, 506 U.S. 224, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) (removing Chief Judge for committing perjury before a grand jury); Ferguson v. Wilcox, 119 Tex. 280, 28 S.W.2d 526 (1930) (removing Texas Governor for criminal activities including misappropriation of public funds); Ritter v. United States, 84 Ct.Cl. 293 (Ct.Cl.1936) (removing Judge for embezzlement, favoritism from bench, practicing law while a Judge, tax evasion and bringing the Judiciary into disrepute), Ingram v. Shumway, 164 Ariz. 514, 794 P.2d 147 (1990) (removing Arizona Governor for obstruction of justice, filing false sworn statements and misuse of state funds). However, this jurisdiction has never deemed General Council litigation and removals as political questions and by entertaining the cases have implicitly indicated that the cases are not political questions. See generally Coalition for Fair Government II v. Chloris A. Lowe, Jr., et al., CV 96-22 (HCN Tr. Ct., May 21, 1996) (entertaining a constitutional dispute between General Council members, not deemed a political question); Roger B. Littlegeorge v. Chloris A. Lowe, Jr., et al., CV 96-21 (HCN Tr. Ct., June 4, 1996) (entertaining a General Council action which removed the plaintiff from his position of employment); Chloris A. Lowe, Jr. v. Ho-Chunk Nation et al., CV 97-12 (HCN Tr. Ct., Mar. 21, 1997) (entertaining a General Council removing the plaintiff as President).
*371 The Supreme Court has stated that the "HON courts are extremely reluctant to interfere with the political decision of the (¡enera! Council.” Lonetree, SU 00-16 (HCN S.Ct., Mar. 16, 2004) at 8 (emphasis added). The Court notes that the Lane-Tree decision relies upon a standard of review, which the Court no longer relies upon, and noted that “it was not error for the Trial Court judge to refuse to review the General Councils [sic ] decision that Mr. LoneTree’s actions constituted malfeasance.” Id, The Supreme Court has reexamined the applicable standards of review for appeals from the Trial Court. See Hope B. Smith v. Ho-Chunk Nation, SU03-08 (Dec. 08, 2003); see also supra pp. 15-16.
IV. Does issuing the injunction serve the public interest?
The Preamble of the Constitution can be divided into four (4) sections. First, “[w]e the people” names the actors. Next, “[i]n order to form a more perfect, government” describes the action. The third section is perhaps the most interesting, and the most neglected, portion of the entire Constitution. The Preamble includes “securing our rights, advance the general welfare, safeguard our interests, sustain our culture, promote our traditions and perpetuate our existence, and secure the natural and self-evident right to govern our selves.” Const., pmbl. (emphasis added). Perhaps the intent of the Constitution’s framers and adopters was to construct a government that would look out for the interests not only of today’s members, but also the interests of posterity, i.e., all future generations of Ho-Chunk members. The Constitution specifically indicates that the government shall be composed of four (4) branches. Const., Akt. Ill, § 2. Ho-Chunk Nation members granted all inherent sovereign powers to the General Council. Id,, Art. IV, § 1. The General Council authorizes the judicial branch to interpret and apply the laws and Constitution, Id., ART. IV, § 2.
A preliminary injunction temporarily suspends actions in order for the parties to fully present the facts and necessary arguments to the Court for complete resolution. The Court has previously noted that “lt]o rash ahead with an election does not serve the public interest. The public has an interest in having the Constitution [sic ] and laws of the Nation properly interpreted and applied.” Clarence Pettibone v. Ho-Chunk Nation General Council et al., CV 03-77 (HCN Tr. Cl.., Del. 27, 2003). Likewise, the people of the Ho-Chunk Nation have voiced an opinion, and have an interest in moving forward with elections. Of the voting members present, 584(59%) voted for removal, 341(39%) voted against removal, and 71 members (7%) abstained from the vote.
Until the issues are resolved with finality through exhaustion of all appropriate means, there will be no resolution for those on either side of the issue, and it will remain a matter of great public interest. Until such resolution is achieved, the controversy will continue to have an impact on the parties involved, including the General Council, regardless of which side of the issue individuals may be on. Simply put, the issues underlying this litigation must be resolved in an expedient manner based on full presentation, of this controversy.
“If improperly removed, even if done by an overwhelming vote, a precedent will be set that any Legislator or President, Judge or other official may be removed for whatever reason some angry tribal-member seeks to label ‘malfeasance.’ This does a disservice to those properly installed officials who have undergone a difficult and trying election or selection process who have honestly and fairly *372 sought a resolution by public discourse within the scope of their duties....”
Coalition for Fair Gov’t II, CV 96-22 (HCN Tr. Ct., July 23, 1996) at 8-9. The public has an interest in a functioning tribal government. The Court finds that issuing the injunction serves the public interest at: this juncture.
The Court has applied the traditional four-part test. The Court weighed the relevant factors with considerable care, and determined that the plaintiff made a sufficient showing to justify the issuance of a preliminary injunction.
IT IS THEREFORE ORDERED that the grant of a preliminary injunction is warranted, and until further order of the Court, the defendants are hereby enjoined as follows:
1. The defendants shall not prevent the plaintiff from performing his presidential responsibilities.
2. The defendants shall not hold a special election to elect a District 2 Legislator.
The parties retain the right to file a timely post-judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from, Judgment or Order. Otherwise, “[t]he time for taking an appeal shall begin from the date the judgment is filed with the [Trial Court] Clerk [of Court].” HCN R. Civ. P. 57. Since this decision represents a non-final judgment, “[a]n appeal from [this] interlocutory order maybe [sic ] sought by filing a petition for permission to appeal with the Supreme Court Clerk within ten (10) calendar days after the entry of such order with proof of service on all other parties to an action.” Ho-Chunk Nation Rules of Appellate Procedure, Rule 8.[5]
IT IS SO ORDERED this 5th day of December 2006, by the Ho-Chunk Nation Trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

. The HCN R. Civ. P. permit the Court to serve the Complaint upon the DOJ when the plaintiff/petitioner names as a party either a unit of government or enterprise or an official or employee being sued in their official or individual capacity. HCN R. Civ. P. 27(B).

. The parties present at the November 27. 2006 Hearing did not request recusal of Associate Judge Amanda L. Rockman, due to the absence of any direct personal interest in this matter. Mot./Preliminary Inj. Hr’g (LPER, Nov. 27, 2006, 09:23:09’CST). Prior to her appointment to the Judiciary, she worked for the Ho-Chunk Nation Department of Justice as a tribal attorney. Her client was the Ho-Chunk Nation. Furthermore, she has neither any familial relationships with any of the parties in this case, nor any family-like relationships with any of the parties in this case. Likewise, she does not have a direct financial interest in the outcome of this case. The judges financial compensation is governed by Constitution of the Ho Chunk Nation (hereinafter Constitution), Art. VII, § 12, and was determined by the Ho-Chunk Nation Legislature (hereinafter Legislature). The Legislature was not equally divided in their vote, thus President Lewis was not required to cast a deciding vote. Const, Art. VI, § 2(i).

. The GCA By-Laws state that one of the purposes of the GCA is to “act as an Agent to the General Council as authorized by the General Council." GCA By-Laws. Art. I, § 2(A). Black's Law Dictionary defines an "agent” as “lojne who represents and acts for another under the contract or relation of agency.” Black's Law Dictionary 63 (6th ed.1990). In a previous decision, the Court indicated that it would refrain from deciding whether the General Council possessed the constitutional authority to adopt the GCA organizational documents. Order (Inviting Participation of Amicus Curiae) at 5 n. 2. Nonetheless, the General Council did demonstrate through its actions that it wished to entrust the GCA with the authority “to assure that [General Council] actions are executed by the Legislature and or [sic] the Executive Branch.” GCA By Laws, Art. I, § 2(B); see also GCA Policy, Function & Organization, Policy (hereinafter GCA Policies), p. 2. This delegation likely represents binding policy. Const., Art. IV, § 3(f). However, the GCA proved either reluctant or unwilling to accept this role. The GCA itself is composed of two (2) elected representative agents from each of the five (5) districts of the Ho-Chunk Nation. GCA ByLaws, Art. II, § I. These agents must be nominated and elected by majority vote of the tribal members residing in their respective areas. Id., § 2. There is nothing that per se states that the GCA shall be the mouthpiece of the General Council. However, proposed resolutions are brought forth from the tribal membership to the GCA with regards to malfeasance or misconduct of elected Nation officials. GCA Policies, Policy, p. 2. It is then the GCA’s responsibility to report to the General Council these acts. Id. Furthermore, the GCA has the ability to propose resolutions to the General Council that set policy for the Nation. Id. One would assume that as elected agents, they would propose resolutions that would contain the wishes of the tribal membership, their constituents in essence. Thus, it seems that although they are not the mouthpiece, as say a public relations department, they are like a mouthpiece in that they organize the thoughts of the 900 plus tribal members that compose General Council in the form of resolutions, presentations, and Annual Reports, See generally GCA By-Laws, Art. I, § 2. The Court notes that there is a discrepancy with regards to whether the GCA By-Laws ever passed. The Certification at the end of General Council Resolution 09-17-05B, which contains the GCA By-Laws and Policies, states that the resolution was defeated after an affirmative vote of 189 members, 792 opposing, and 78 abstaining. However, it states that Resolution 09-17-05 B passed with 726 voting for, 222 against, and 139 abstaining within the Annual Meeting Minutes from the 2005 General Council Meeting. *358 The Court-fully recognizes that a discrepancy exists, however the voice of the people should not simply be wholly disregarded based upon a procedural technicality. Regardless, the Court is appreciative (or the GCA participation in the court proceedings.

. A discrepancy exists in this regard. During the Hearing, the defendants indicated that an election would occur on December 30, 2006. However, the President was removed by the General Council on November 11, 2006, and President Pm Tempore Blackdeer appropriately assumed his position, thereby leaving a vacancy in the Legislature. The Special Election is scheduled to occur fifty (50) days later, and not within thirty (30) days as constitutionally required. This election is inconsistent with prior presidential removals. For example, the General Council removed Jacob Lonetree from office on October 21, 2000. Voters Oust Lonetree, Hock Worak, Oct. 30, 2000, at 1. The Election Board held the election for District 1 Legislator on November 18, 2000. Ho-Chunk Nation Special Election, Hock Worak, Nov. 29, 2000, at 4. Any other interpretation of such provision renders this portion of the Constitution meaningless, and will cause underrepresentation within District 2.

. Parties can obtain a copy of the applicable rules by contacting the Ho-Chunk Nation Judiciary" at (715) 284-2722 or (800) 434-4070 or visiting the judicial website at www.ho-chunknation.com/government/judicial/cons_ law.htm.